IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF ILLINOIS

**ROBERT ALLEN,**                           )
                                            )
              Plaintiff,                    )
                                            )
V.                                          )          Civil No.  **04-12-CJP**[1]
                                            )
**EUGENE MCADORY, et al.,**                 )
                                            )
              Defendants.                   )

## ORDER

**PROUD, Magistrate Judge:**

Plaintiff Robert Allen is in the custody of the Illinois Department of Corrections, housed

at all relevant times at Menard Correctional Center.  Plaintiff has filed suit pursuant to 42 U.S.C.

§ 1983 for deprivations of his constitutional rights by the defendants, all of whom are

Department of Corrections employees.  More specifically, plaintiff asserts the following claims:

1.    Defendant Correctional Officer Chad Todaro fabricated disciplinary
      charges against plaintiff on July 17 and November 12, 2003, in retaliation
      for plaintiff filing grievances against him, in violation of the First
      Amendment;

2.    Defendants Major Scott Wine and Sergeant James Kloth failed to
      intervene to prevent Todaro from issuing fabricated disciplinary charges
      against plaintiff, in violation of the Eighth Amendment; and

---

[1]In accordance with 28 U.S.C. § 636(c)(1), upon the consent of the parties, Chief Judge
G. Patrick Murphy referred this action to the undersigned magistrate judge for all further
proceedings, through and including entry of final judgment.  **(Docs. 6, 13 and 14).**

3.      Defendants Lieutenant Craig Mitchell and Correctional Officer Minh Scott, who sat on the Adjustment Committee that convicted plaintiff of the November 12, 2003, charges, denied him due process in violation of the Fourteenth Amendment when they failed to permit him to call witnesses and present evidence.

**(Docs. 1 and 4).**

Defendants Todaro, Wine, Kloth, Mitchell and Scott are before the Court seeking summary judgment.   They argue:

1.      Plaintiff has failed to exhaust administrative remedies before filing suit, as required by 42 U.S.C. § 1997e(a);

2.      Plaintiff has no evidence of the predicate grievances that allegedly motivated defendant Todaro to retaliate against plaintiff;

3.      Defendants Wine and Kloth lacked the necessary personal involvement for liability to attach, in that they did not directly participate in the fabrication of disciplinary charges against plaintiff, nor did they have an opportunity to intervene;

4.      The disciplinary action taken against plaintiff by defendants Mitchell and Scott did not impact a liberty interest and therefore constitutional due process protections were not triggered; and

5.      Defendants are entitled to qualified immunity, in that plaintiff cannot show that the defendants violated clearly established constitutional rights.

**(Docs 19 and 20).**

## <u>Standard for Summary Judgment</u>

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.,* 211 F.3d 392, 396 (7th Cir. 2000).**  In determining the existence of a genuine dispute of material fact, the Court construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in favor of that party.  ***See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986); *Spath,* 211 F.3d at 396.**

If the moving party meets its burden, the nonmoving party has the burden "to go beyond the pleadings and affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact which requires trial."  ***Borello v. Allison,* 446 F.3d 742, 748 (7th Cir. 2006) (internal quotation marks and citations omitted); *Celotex,* 477 U.S. at 322-26; *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir. 1996).**  A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," ***Anderson,* 477 U.S. at 247,** or by "some metaphysical doubt as to the material facts," ***Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)**.  Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." ***Anderson,* 477 U.S. at 252; *Insolia v. Phillip Morris Inc.,* 216 F.3d 596 (7th Cir. 2000).**

## Exhaustion of Administrative Remedies

Exhaustion of administrative remedies in accordance with 42 U.S.C. § 1997e(a), while not jurisdictional per se, is a "precondition" to suit, regardless of the apparent futility of pursuing an administrative remedy, regardless of whether money damages are sought as a tangential remedy, and regardless of notions of judicial economy.  ***Woodford v. Ngo,* --- U.S. ----, ---- - ----,**

3

**126 S.Ct. 2378, 2382-2383(2006); *Booth v. Churner*, 532 U.S. 731, 739 (2001)*; Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002);*Perez v. Wisconsin Department of Corrections*, 182 F.3d 532 (7th Cir. 1999).**

"Because failure to exhaust administrative remedies is an affirmative defense, defendants have the burden of pleading and proving the defense." ***Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 2000).** "Defendants may waive or forfeit reliance on [42 U.S.C.] § 1997e(a), just as they may waive or forfeit the benefit of a statute of limitations." ***Perez,* 182 F.3d at 536.**

The rules governing the filing and prosecution of a grievance, including the appeal, must be followed to achieve exhaustion; substantial compliance is insufficient. ***Lewis v. Washington* 300 F.3d 829, 833-834 (7th Cir. 2002).** When prison officials fail to respond to an inmate grievance that remedy is considered exhausted because it has been rendered "unavailable." ***Id.*** Similarly, a remedy that prison officials impede a prisoner form using is "unavailable." ***Dale v. Lappin*, 376 F.3d 652, 656 (7th Cir. 2004); *Dole v. Chandler*, 438 F.3d 804, 811-812 (7th Cir. 2006).**

The grievance procedures applicable to the Illinois Department of Corrections are set forth under Title 20 of the Illinois Administrative Code, Section 504.800 *et seq*. A grievance must be initiated within 60 days after the incident is discovered. The grievance must set forth the "who, what, when and where" of the incident at issue. Basically, an inmate first takes his complaint to a correctional counselor; if this does not resolve the problem, he is to file a written grievance on an institutional form, which is then reviewed by a designated grievance officer. The grievance officer reports his or her findings and recommendations "promptly"to the chief

administrative officer, i.e., the warden, and the warden advises the inmate of the institutional

decision within two months of receipt of the grievance.  In an emergency, an inmate may send

his grievance directly to the warden.  If the warden determines that there is a substantial risk of

imminent personal injury or other serious or irreparable harm to the inmate, the grievance is to

be decided on an expedited basis.  The inmate may appeal the warden's disposition of the

grievance in writing to the director of the Department of Corrections within 30 days of the

warden's decision. The director reviews the grievance and the responses of the grievance officer

and warden, and determines whether the grievance requires a hearing before the Administrative

Review Board.  If it is determined that the grievance is meritless or can be resolved without a

hearing, the director will issue a final decision; otherwise, the grievance is referred to the

Administrative Review Board, which may hold hearings and examine witnesses.  The Board

submits a written report of its findings and recommendations back to the director, who than

makes a final determination within six months.  When an emergency grievance is appealed, the

Administrative Review Board is supposed to expedite review.  ***See* 20 Ill.Adm.Code § 504.810-**

**850 (2003).**

According to the affidavit of Sherry Benton, Chairperson of the Administrative Review

Board, a review of the Board's records reveals that plaintiff Allen never filed a timely grievance

regarding the disciplinary reports dated July 17 and November 12, 2003, or the allegations of

retaliation by Correctional Officer Todaro.  **(Doc. 20-4, p. 7).**  In contrast, plaintiff Allen's

December 29, 2003, affidavit indicates he filed multiple grievances since the start of defendant

Todaro's harassment, but they were ignored; and he last filed an emergency grievance on

November 25, 2003, which was pursued all the way to the Director of the Department.  **(Doc. 1).**

Plaintiff's June 18, 2007, affidavit, submitted in response to the motion for summary judgment, reiterates that grievances were initiated but never addressed by prison officials because it was common practice for prison guards to destroy grievances.  **(Doc. 25-3, p. 22).**  According to plaintiff, his November 12, 2003, grievance (Grievance No. 2067) was exhausted, in that he pursued it through the grievance system, all the way to the Administrative Review Board, which did not respond.  **(Doc. 25-3, pp. 5-6 and 22).**

With respect to the July 17, 2003, disciplinary ticket[2], plaintiff has submitted what appears to be a hand-written "copy" of an emergency grievance dated July 20, 2003.  According to plaintiff, he never received a response to that and other similar grievances.  **(Doc. 1; Doc. 25-3, p. 22).**  As noted above, Administrative Review Board records do not reflect receipt of an appeal of any grievance regarding the July 2003 incident.  Keeping in mind that the defendants bear the burden of proving exhaustion, questions of fact at this juncture are decided in plaintiff's favor, and failure to respond to a grievance or interference with the grievance process renders that administrative remedy unavailable and, thus, the Court cannot conclude that plaintiff failed to exhaust administrative remedies relative to the July 2003 disciplinary ticket issued by defendant Todaro.

With respect to the November 12, 2003, disciplinary ticket and the subsequent Administrative Review Board hearing, the record contains a copy of Grievance No. 2067, dated November 20, 2003, regarding the disciplinary report issued by Todaro on November 12, 2003, and outlining the full history of plaintiff's relations with Todaro.  **(Doc. 1; Doc. 25-3, pp. 5-6).**

---

[2]The Adjustment Committee that tried plaintiff on that ticket was comprised of non-defendants, so there cannot be a due process claim relating to that ticket.

6

That grievance is labeled as an emergency grievance, and it is undisputed that it proceeded through the grievance process to the point that the warden denied it on December 9, 2003.[3] Plaintiff has submitted a copy of the response to the grievance, further reflecting that plaintiff timely appealed to the Director on December 10, 2003. The copy of that same response submitted by the defendants does not reflect that plaintiff signed the appeal section. In any event, the complaint was signed December 29, 2003, and received and filed by the Court on January 9, 2004– only one month after the appeal to the Administrative Review Board was set in motion. Although the Illinois Administrative Code does not prescribe what an "expedited" response is, the defendants do not dispute that the Administrative Review Board has never acted on plaintiff's grievance. Therefore, the Court cannot conclude that plaintiff failed to exhaust administrative remedies prior to filing this action.

Defendants have failed to meet their burden in showing that plaintiff failed to exhaust available administrative remedies relative to the July 17, 2003, disciplinary ticket and the November 12, 2003, disciplinary ticket and subsequent Administrative Review Board hearing.

### The Predicate Grievances

An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 283-84, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Matzker v. Herr,* 748 F.2d 1142, 1150 (7th Cir.1984), *limited on other grounds*, *Salazar v. City of Chicago*, 940 F.2d 233, 240-41 (7th Cir.1991). Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court. *See Preiser*, 411 U.S. at 493, 93 S.Ct. 1827. Thus, a prison

---

[3]There appears to be a factual dispute regarding whether the grievance was actually designated as an emergency grievance. However, the copy plaintiff submitted reflects the emergency label, and for purposes of this motion all facts are construed in plaintiff's favor.

> official may not retaliate against a prisoner because that prisoner filed a
> grievance. *See Babcock*, 102 F.3d at 274-75; *Black*, 22 F.3d at 1402-03; *see also*
> *Higgason*, 83 F.3d at 810 (retaliation for filing lawsuit); *Murphy v. Lane*, 833
> F.2d 106, 108-09 (7th Cir.1987) (per curiam) (same). This is so even if the
> adverse action does not independently violate the Constitution. *See Babcock*, 102
> F.3d at 275.

**DeWalt v. Carter, 224 F.3d 607, 618 (7th Cir. 2000).**

To establish a claim of retaliation for exercising free speech, an inmate must allege a
chronology of events from which retaliation can be inferred, and prove both that his grievances
were the motivating factor behind the defendant's conduct, and that things would have transpired
differently absent the retaliatory motive. ***Hasan v. Department of Labor*, 400 F.3d 1001, 1005
(7th Cir. 2005); *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996).** The defendants assert that
plaintiff has no evidence of the predicate grievances that allegedly motivated defendant Todaro
to retaliate against plaintiff, thus he has failed to substantiate the alleged chronology of events.
Todaro's affidavit states that he was unaware of any grievance filed by plaintiff prior to writing
the July 17 and November 12, 2003 disciplinary tickets. **(Doc. 20-4, pp. 1-2).**

With respect to the July 17, 2003, disciplinary ticket, the complaint alleges that on July 3,
2003, defendant Todaro told plaintiff, "I haven't forgotten what you did to me and I'm working
on sending your ass to segregation." **(Doc. 1, p. 5).** According to plaintiff, he then filed an
emergency grievance." **(Doc. 1, p. 5).** Shortly thereafter, on July 17, 2003, Todaro told plaintiff,
"I told you not to fuck with me; your ass is in deadlock, now I got something for your ass nigger;
remember what I told you after you filed grievances against me; you can start packing your shit,
you are going to segregation." **(Doc. 1, p. 5).** It was just after that statement that Todaro issued

the disciplinary ticket.[4]

There is no documentary evidence of grievances filed by plaintiff about defendant Todaro (or anything or anyone else) prior to July 17, 2003. According to plaintiff, his grievances were either destroyed before they even reached the appropriate officials, or they were never addressed. **(Doc. 25-2, p. 22).** When he was deposed, plaintiff asserted the July ticket was retaliatory, but he failed to expound on any predicate grievances.[5] Nevertheless, plaintiff's account of Todaro's comments on July 17, 2003, reflects that Todaro knew plaintiff had filed grievances, and that Todaro was acting in retaliation. Therefore, there are material questions of fact regarding the predicate grievance(s) leading up to the July ticket which preclude summary judgment.

Similarly, material questions of fact preclude summary judgment regarding the November 12, 2003, disciplinary ticket. According to the complaint, prior to the November 12, 2003, ticket defendant Todaro told plaintiff, "I don't care who the f— you write or tell, you are going to segregation for writing f—ing grievances; my buddies run the Adjustment Committee, and it will be a long time before you write another grievance on me." **(Doc. 1, p. 5a).** Plaintiff has also submitted documentation of two grievances lodged against defendant Todaro prior to

---

[4]Plaintiff's complaint is verified and, therefore, is considered an affidavit that qualifies as evidence in opposition to summary judgment. ***See Ford v. Wilson,*** **90 F.3d 245, 246-247 (7th Cir. 1996).**

[5]Plaintiff's deposition testimony is difficult to follow, but understanding where plaintiff was housed at relevant times clarifies that his narrative about events leading up to the retaliation pertains to the November 2003 ticket. Plaintiff was housed in the north cellhouse when he was ticketed in July 2003. **(Doc. 1, p.5 and 7/17/2003 Disciplinary Report).** Plaintiff's deposition testimony focused on events in the south cellhouse, where he was housed in November 2003. **(Doc. 20-2, pp. 25-28).**

the November 12, 2003, ticket– one dated June 20, 2003; the other dated November 9, 2003.

**(Doc. 1).**  It could also be argued that Todaro's July 17, 2003, comments indicating he knew

plaintiff had filed grievances also substantiate Todaro's knowledge of the grievances.

Insofar as Todaro's affidavit also describes neutral reasons for issuing both disciplinary

tickets, plaintiff's verified allegations that the charges were fabricated creates a material question

of fact that is a further impediment to granting summary judgment.

### Personal Involvement

The complaint alleges that defendants Major Scott Wine and Sergeant James Kloth were

both alerted to defendant Todaro's animosity toward plaintiff and his threats to have plaintiff

sent to segregation, but they did nothing to stop Todaro from fabricating disciplinary tickets on

July 17 and November 12, 2003.  **(Doc. 1, pp. 5a-5b).**  Defendants Wine and Kloth argue that

they lacked the necessary personal involvement for liability to attach, in that they did not directly

participate in the fabrication of disciplinary charges against plaintiff, nor did they have an

opportunity to intervene.

> To recover damages under 42 U.S.C. § 1983, a plaintiff must establish
> defendants' personal responsibility for the claimed deprivation of a constitutional
> right.  However, a defendant's direct participation in the deprivation is not
> required.  An official satisfies the personal responsibility requirement of section
> 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's
> constitutional rights, or if the conduct causing the constitutional deprivation
> occurs at her direction or with her knowledge and consent.

*Crowder v. Lash* **687 F.2d 996, 1005 (7th Cir. 1982) (citations omitted).**

In *Crowder v. Lash*, the plaintiff prisoner alleged that the defendant correctional officer

was aware of the allegedly unconstitutional conditions of confinement through communications

with subordinates, and had also been informed personally and in writing by the plaintiff.  The

10

appellate court found insufficient personal involvement in the alleged deprivations, as there was no evidence that the challenged actions occurred at the defendant's direction or with his express consent. **Id. at 1005-1006.** In *Miller v. Smith*, 220 F.3d 491, 495 (7th Cir. 2000), the appellate court further specified that liability will attach where the defendant has a "realistic opportunity" to step forward and prevent the harm.

Taking plaintiff's allegations that he conveyed Todaro's threats to Wine and Kloth as true, this claim still fails because plaintiff does not allege how they could have possibly prevented Todaro from manufacturing the disciplinary charges. At one point in time between the issuance of the two tickets, Kloth assured plaintiff that he had told Todaro to leave plaintiff alone. **(Doc. 20-2, p. 13).** Short of pulling the pen from Todaro's hand at the time he wrote the tickets, it is hard to imagine how either Wine or Kloth could have intervened. There is no allegation that Wine or Kloth were present at the time the tickets were written. Therefore, defendants Wine and Kloth are entitled to summary judgment on Count 2 of the complaint, which is the only claim lodged against them.

## Due Process

Count 3 of the complaint alleges that Lieutenant Craig Mitchell and Correctional Officer Minh Scott, who sat on the Adjustment Committee that convicted plaintiff of the November 12, 2003, charges, denied him due process in violation of the Fourteenth Amendment when they failed to permit him to call witnesses and present evidence. Mitchell and Scott now argue that the disciplinary action taken against plaintiff did not impact a liberty interest, therefore constitutional due process protections were not triggered.

"To establish a procedural due process violation, a prisoner must demonstrate that the

11

state deprived him of a liberty or property interest created either by state law or the Due Process Clause itself." *De Walt v. Young,* **224 F.3d 607, 613 (7th Cir.2000) (citations omitted).** When plaintiff was found guilty of the November 12, 2003, charges, he was demoted to C grade for two months, placed in segregation for two months, and lost commissary privileges for two months. **(Doc. 1, 11/17/03 Adjustment Committee Final Summary Report).**

Disciplinary segregation itself does not necessarily implicate the due process clause, if "such segregation does not impose an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* **515 U.S. 472 (1995);** *Wagner v. Hanks,* **128 F.3d 1173, 1176 (7th Cir.1997).** Plaintiff has made no such allegations. Furthermore, there is no protected liberty interest in demotion to C-grade and losing commissary privileges; prisoner has no liberty interest in remaining in general population, avoiding transfer to another prison, or in retaining grade level. *Thomas v. Ramos,* **130 F.3d 754, 760, 762 n. 8 (7th Cir.1997) (collecting cases).** Plaintiff did not lose good time credit or otherwise alter the length of his sentence, which would have implicated a protected liberty interest. *Wolff v. McDonnell***, 418 U.S. 539, 556-572 (1974).** Therefore, defendants Mitchell and Scott are entitled to summary judgment on Count 3, the only claim lodged against them.

## Qualified Immunity

Lastly, the defendants generally assert that they are entitled to qualified immunity, in that plaintiff cannot show that they violated clearly established constitutional rights.

The doctrine of qualified immunity protects government officials from monetary liability when their conduct "does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." *Kitzman-Kelley v. Warner,* **203 F.3d 454, 457 (7th Cir. 2000) (quoting** *Harlow v. Fitzgerald,* **457 U.S. 800, 818 (1982)).** The doctrine permits government officials the freedom to perform their discretionary functions without fear of potential liability for civil damages. *Elwell v. Dobucki,* **224 F.3d 638, 640 (7th Cir. 2000).** *See also Landstrom v. Illinois Dept. of Children and Family Services,* **892 F.2d 670, 674 (7th Cir. 1990)(recognizing that the doctrine of qualified immunity protects public officers "from undue interference with their duties and from potentially disabling threats of liability").** Officials lose their immunity only when their conduct violates clearly established statutory or constitutional rights. *Elwell* **at 640 (citing** *Harlow,* **457 U.S. at 817).**

The plaintiff bears the burden of establishing that a constitutional right was clearly established at the relevant time. *Jacobs v. City of Chicago,* **215 F.3d 758, 766 (7th Cir. 2000).** The Court of Appeals for the Seventh Circuit has explained: "The plaintiff must demonstrate that at the time of the alleged unconstitutional actions of the defendants, there was clearly established law holding that their actions violated rights secured by the Constitution of the United States." *Kitzman-Kelley,* **203 F.3d at 459.** A right is "clearly established" if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* **483 U.S. 635, 640 (1987).** To determine whether a right is clearly established, the courts look to controlling Supreme Court precedent and circuit law. *Jacobs,* **215 F.3d at 767.**

At this juncture, only Count 1 against defendant Todaro remains. The legal precedents for assigning liability for retaliating against a prisoner because that prisoner filed a grievance are well established. *DeWalt v. Carter,* **224 F.3d 607, 618 (7th Cir. 2000).** As discussed above,

questions of fact regarding the underlying facts remain.  Therefore, it remains to be seen whether defendant Todaro's actions constituted a violation of the First Amendment, and summary judgment based on qualified immunity cannot be decided.

**IT IS THEREFORE ORDERED**, for the aforestated reasons, that the defendants' motion for summary judgment **(Doc. 19)** is **GRANTED IN PART AND DENIED IN PART**. Defendants Wine and Kloth are granted summary judgment relative to Count 2, the only claim against them; and defendants Mitchell and Scott are granted summary judgment relative to Count 3, the only claim against them.  Defendant Todaro is the only remaining defendant, and Count 1 is the only remaining claim.

The Clerk of Court shall have the record reflect that defendants Wine, Kloth, Mitchell and Scott are terminated as parties.  Final Judgement will be entered at the conclusion of the case.

**IT IS SO ORDERED.**

**DATED:  July 5, 2007**

s/ Clifford J. Proud_____
**CLIFFORD J. PROUD**
**U. S. MAGISTRATE JUDGE**

14